# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA ANN PICKETT, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00563-SRC |
| ) | |
| MASSACHUSETTS MUTUAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant(s). ) | |

### Memorandum and Order

The prospect of this case remaining in federal court turns on whether Plaintiff Patricia Ann Pickett could plausibly receive an attorney's fee award of $19,411. Carrying the initial burden to prove that such an award is possible, Defendant Massachusetts Mutual Life Insurance Company points to cases also involving vexatious-refusal-to-pay claims where attorney's fees awards exceeded $19,411, and proffers an affidavit and corresponding spreadsheet from an experienced attorney explaining that the anticipated attorney's fees in this matter could reasonably exceed $19,411. Pickett maintains that Mass Mutual failed to carry its burden because its evidence in support is merely speculative.

**I.      Background**

After Mass Mutual purportedly wrongfully denied her disability benefits, Pickett filed suit in the Circuit Court of St. Louis City. Doc. 3. She asserts claims for breach of contract and vexatious refusal to pay. *Id*. Mass Mutual removed this action to federal court based on diversity jurisdiction. Doc. 1 at ¶ 5.

Pickett filed a motion to remand, arguing that while complete diversity exists between the parties, "Mass Mutual has failed to meet its burden of establishing the amount in controversy by a preponderance of the evidence." Doc. 12 at p. 1. With Mass Mutual filing an opposition to the motion, Doc. 13, and Pickett filing her reply, Doc. 14, this matter is ripe for review.

**II.   Standard**

A defendant may remove to federal court any state court civil action over which the federal court could exercise original jurisdiction. 28 U.S.C. § 1441(a). "The [removing] defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). "Federal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quotation marks omitted). But when a federal court does have jurisdiction over a case properly before it, it has a "virtually unflagging obligation to exercise it." *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020) (citation and quotation marks omitted).

**III.   Discussion**

Under 28 U.S.C. § 1332, federal district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States[.]" 28 U.S.C. § 1332(a)(1). In determining whether a case meets the jurisdictional minimum for diversity jurisdiction, the Court must look to the amount in controversy at the time of removal. *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969) ("It is the situation at the time of removal which is determinative.").

The defendant must prove the "jurisdictional fact" of the amount in controversy by a preponderance of the evidence. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). "The

jurisdictional fact . . . is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are . . . ." *Kopp*, 280 F.3d at 885. The defendant need only show that a fact finder could legally award more than $75,000. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009). The defendant's burden is a pleading requirement, not a demand for proof. *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013). "Once a defendant [] explain[s] how damages can *plausibly* exceed $75,000, a plaintiff seeking remand must demonstrate it is legally impossible to recover more than $75,000." *Joyce v. Wal-Mart Stores E. I., L.P.*, 2019 WL 320596, at *1 (W.D. Mo. Jan. 24, 2019) (emphasis added) (citing *Raskas*, 719 F.3d at 888).

To meet its burden, the removing party must present "some specific facts or evidence demonstrating that the jurisdictional amount has been met[.]" *Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004). The "preponderance of the evidence" standard requires a defendant to demonstrate "by sufficient proof that a plaintiff's verdict reasonably may exceed" the jurisdictional amount. *City of University City v. AT&T Wireless Services, Inc.*, 229 F. Supp. 2d 927, 932 (E.D. Mo. 2002). When calculating the amount in controversy, punitive damages, and statutory attorney's fees are included in the amount in controversy. *Peterson v. The Travelers Indemnity Company*, 867 F.3d 992, 995 (8th Cir. 2017); *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005); *Walz v. FedEx Office and Print Services, Inc.*, 2012 WL 5386058, at *2 (W.D. Mo. Nov. 2, 2012).

Mass Mutual claims it has set forth sufficient evidence to establish the amount in controversy based on the amount recoverable under the disability-insurance policy as well as the penalty and attorney's fees recoverable under Missouri's vexatious-refusal-to-pay statute, Mo. Rev. Stat. § 375.420. The parties do not dispute that the total amount recoverable under the

3

policy totals $50,400.  Doc. 1 at ¶ 7; Doc. 12 at p. 2.   The parties also do not dispute that the potential penalty under Missouri's vexatious-refusal-to-pay statute, Mo. Rev. Stat. § 375.420, equals $5,190.00.[1]  *See* Doc. 1 at ¶ 10; Doc. 12 at p. 2.  Thus, "[a]bsent attorneys' fees, the contractual and extra-contractual damages possibly available to Plaintiff should she prevail are $55,590."  Doc. 1 at ¶ 11.  Mass Mutual contends that the remaining $19,411 in damages required to meet the jurisdictional threshold has been met because the attorney's fees award "reasonably may exceed" that amount.

Pickett argues that Mass Mutual's calculation of attorney's fees award is merely an estimate, and Mass Mutual "has failed to establish by a preponderance of the evidence that the amount in controversy meets the $75,000.00 threshold required by 28 U.S.C. §1332."  Doc. 12 at p. 3.  Pickett notes that while Mass Mutual's Notice of Removal, Doc. 1, cites three cases involving attorney's fee awards of $20,000 on a vexatious-refusal-to-pay claim, *Quinn v. American Family Mutual Insurance Company,* Jackson County, Missouri Cir. Ct. Case No. 1516-CV26996, 2017 WL 6804239 (verdict July 12, 2017), *Qureshi v. American Family Mutual Insurance Company,* City of St. Louis, Missouri Cir. Ct. Case No. 1522-CC-10460, 2018 WL 7254811 (verdict Nov. 15, 2018)*; see also Tate v. Golden Rule Ins. Co*., 859 S.W.2d 831, 835 (Mo. Ct. App. 1993), Mass Mutual "fails to explain why those cases are dispositive as to what the cost and expense of litigating this matter will be."  Doc. 12 at p. 3.  Pickett further argues that those cases offer little support because Mass Mutual does not explain how these cases share similarities to the present action, other than being brought under the same statute.  *Id*.  Pickett therefore contends that Mass Mutual has failed to come forward with sufficient evidence because

---

[1] Under Missouri's vexatious-refusal-to-pay statute, a plaintiff may be awarded damages "not to exceed . . . twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars, and a reasonable attorney's fee[.]"  Mo. Rev. Stat. § 375.420.  Accordingly, the damages available to Pickett equals $5,190  ((20% x $1,500) + (10% x ($50,400 - $1,500)).  *See* Doc. 1 at ¶ 10.

4

Mass Mutual simply speculates what attorney's fees "could be," without evidence of what they "will be."  *Id*. at pp. 3-4.

In response, Mass Mutual once again cites *Quinn*, *Qureshi*, and *Tate*, as well as *Fischer v. First Am. Title Ins. Co.*, No. 1016-cv29001, 2011 WL 7054299, and provides an affidavit from Kate Villanueva, counsel for Mass Mutual, that sets forth an estimate of Pickett's expected attorney's fees for this matter.  Doc. 13 at pp. 5–8; Doc. 13-1.  Based on her "extensive experience litigating disability and life insurance matters[,]" Villanueva "*conservatively* estimates fees of $26,600 in this matter through dispositive motions only."  Doc. 13 at p. 5; Doc. 13-1 at ¶¶ 8–26 (emphasis and underline in original).  She reaches this estimate by calculating the hours Pickett's counsel presumably spent drafting the pleadings and the motion for remand, as well as the hours she anticipates will be spent on written discovery, fact-witness and expert depositions, time speaking with the client, and dispositive motion briefing.  Doc. 13-1 at ¶¶ 8–26.  Villanueva expects Pickett's counsel will spend a total of 76 hours on this matter at an hourly rate of $350, totaling $26,600 in attorney's fees.  Doc. 13-1 at p. 6.  In reaching this calculation, she excluded costs for a rebuttal expert, even though she anticipates Pickett calling one, as well as any costs related to discovery disputes or mediation.  *Id*. at ¶¶ 20, 22, 26.

Pickett counters that Villanueva's affidavit does not constitute sufficient evidence to satisfy the jurisdictional threshold of $75,000.  She argues that the affidavit fails to resolve the evidentiary deficiencies because Villanueva "fails to provide an explanation as to why [her] experience will apply to a claim under Missouri's vexatious refusal statute."  Doc. 14 at p. 2.  Pickett also argues that Mass Mutual failed to explain why the tasks Villanueva expects to complete in this litigation are necessary for this litigation.  Doc. 14 at pp. 2–3.

5

As an initial matter, while Eighth Circuit precedent permits the inclusion of statutory attorney fees in calculating the amount in controversy, "[t]here is currently 'a split in authority as to whether *future* attorney's fees may be included in addition to the attorney's fees as of the date of removal.'"  *Stanley v. Lafayette Life Ins. Co.*, No. 3:13-CV-05137-MDH, 2015 WL 2062568, at * 3 (W.D. Mo. May 4, 2015) (quoting *Feller v. Hartford Life & Acc. Ins. Co.,* 817 F.Supp.2d 1097, 1104 (S.D. Iowa 2010) (collecting cases)).   "While the Eighth Circuit has not yet addressed the issue, the majority of district courts within this circuit have held that attorney fees incurred post-removal are includable in the amount in controversy calculation so long as they are reasonable."  *Id*. at *4, *4 n.6 (collecting cases).   Additionally, as another court in this district recently explained, "the Eighth Circuit has at least tacitly approved consideration of an ultimate award of attorneys' fees, as opposed to the amount of attorneys' fees incurred at the time of filing or at the time of removal."  *Embry v. Ventura Foods, LLC*, No. 4:19-CV-2773 SNLJ, 2020 WL 3077058, at *3 (E.D. Mo. June 10, 2020) (citing *Peterson*, 867 F.3d at 995; *Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018) (upholding district court's retention of CAFA jurisdiction where it "concluded that it was more likely than not that attorneys' fees *could* exceed $1.4 million[.]").   Accordingly, the Court finds that it may consider the attorney's fees expected to be incurred post-removal in its calculation.

Courts have repeatedly found that it is reasonable to estimate attorney's fees based on a 25% contingency fee when calculating the amount in controversy.  *See Harris v. TransAmerica Life Ins. Co.*, No. 4:14-CV-186 CEJ, 2014 WL 1316245, at *1 (E.D. Mo. Apr. 2, 2014) (citing *Peng Vang v. Mid–Century Ins. Co.,* No. 12–CV–1309–DGK, 2013 WL 626985, at *2 (W.D. Mo. Feb. 20, 2013)); *Flores v. Fin. Indem. Co.*, No. 13-0578-CV-W-SOW, 2013 WL 12141437 (W.D. Mo. Aug. 9, 2013) (citations omitted); *but see Baker v. NNW, LLC*, No. 15-00222-CV-W-

6

GAF, 2015 WL 12843831, at *2 (W.D. Mo. June 1, 2015) (considering 33% contingency fee as "standard" for attorneys' fees). Thus, at a minimum, the Court can reasonably estimate that the attorney's fees in this matter could total $13,897.50 (25% of $55,590), over $5,500 short of the attorney's fees required to meet the amount in controversy threshold. The question therefore becomes whether Mass Mutual has sufficiently demonstrated that the $19,411 in attorney's fees needed to meet the jurisdictional threshold, amounting to a 34.9% contingency fee, can be reasonably estimated in this case.

In determining an amount of attorney's fees that may be awarded, the Court may consider attorney's fees awarded in similar cases. *See Harris*, 2014 WL 1316245, at *1; *see also Seper v. Allstate Fire & Cas. Insruance* [sic] *Co.*, No. 4:15-CV-01823-JCH, 2016 WL 145702, at *2 (E.D. Mo. Jan. 12, 2016). Attorney's fees have been awarded in cases involving claims under section 375.420 well in excess of 34.9% of the actual damages. *See Tate,* 859 S.W.2d at 835 (affirming award of attorney's fees under Missouri vexatious-refusal statute in amount of $20,915.00 where claim of actual damages was $5,035.69); *Dyhne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454 (Mo. 2006) (en banc) (award of attorney's fees under Missouri vexatious-refusal statute in the amount of $18,089.57 where claim of actual damages was $5,150). As other courts have noted, the jury awards in *Tate* and *Dhyne* support the potential attorney's fees award in this matter. *Harris*, 2014 WL 1316245, at *2; *Seper*, 2016 WL 145702, at *2.

Mass Mutual cites other cases where attorney's fees exceeding $20,000 were awarded in vexatious-refusal-to-pay claims under Mo. Rev. Stat. § 375.420. In *Qureshi*, the jury awarded the plaintiff $250,000 for the personal injury claim and on the policies, $18,000 as a penalty, and $96,828.50 in attorney's fees. In judgment, the court reduced the $250,000 award to $75,000, which was the total amount of the available stacked uninsured motorist policy limits, and added

7

$1,247.54 for costs, for a total recovery of $191,076.04. *Qureshi,* 2018 WL 7254811. Thus, even accepting the actual damages as $250,000, the amount originally awarded, the ratio of attorney's fees to actual damages equaled 38.7%. In *Fischer*, the plaintiff was awarded roughly $57,000 in actual damages and $24,000 in attorney's fees from a title insurer, equaling a ratio of 42%. 2011 WL 7054299. However, *Quinn* offers less support because while the jury did award $30,000 in attorney's fees, that ratio of attorney's fees to actual damages falls below 34.9%. 2017 WL 6804239. Nevertheless, *Tate*, *Dyhne*, *Qureshi*, and *Fischer* each involved attorney's fees awards under section 375.420 exceeding 34.9% of the actual damages.

Additionally, unlike other cases where the Court remanded the case to state court because the parties failed to "proffer . . . [a] hypothetical itemization to show that . . . attorney fees, when added to the actual damages, would raise the sum over $75,000[,]" *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1080 (W.D. Mo. 2014), or failed to specify an amount it "believes [the plaintiff] may incur in attorney's fees, [or] . . . suggest a formula for calculating [attorney's fees,]" *Seper*, 2016 WL 145702, at *2, Mass Mutual provided a breakdown of expected attorney's fees from Kate Villanueva, Doc. 13-1 at p. 6, an attorney with approximately 15 years of experience litigating insurance disputes. Doc. 13 at ¶ 6. This breakdown specified the anticipated attorney's fees at each pre-trial stage of litigation and Villanueva explained that the written discovery and depositions she anticipates are routinely conducted in disability-insurances cases. *Id*. at ¶¶ 17–18. Villanueva also did not include costs for mediation, a cost that can be reasonably anticipated because, pursuant to the undersigned Judge's Requirements, this case will be referred to alternative dispute resolution. Courts have found similar affidavits sufficient to establish estimated attorney's fees, *Sterling v. Minnesota Life Insurance Company*, 4:19-cv-00904-JCH, Docs. 12, 13 (E.D. Mo.), and have accepted similar explanations of expected

8

attorney's fees at oral argument for a motion for remand.  *Mueller v. RadioShack Corp.*, No. 11-CV-0653 PJS/JJG, 2011 WL 6826421, at *3 (D. Minn. Dec. 28, 2011).

In sum, a possible award of $19,411 in attorney's fees is supported by other cases involving vexatious-refusal-to-pay claims under section 375.420 where attorney's fees have been awarded at a higher ratio to the actual costs than the 34.9% ratio required here to meet the amount in controversy, as well as Villanueva's affidavit and spreadsheet itemizing the anticipated attorney's fees based on her experience litigating insurance-coverage disputes. Accordingly, the Court finds that Mass Mutual established by a preponderance of the evidence that the amount of controversy exceeds $75,000.

Because Mass Mutual has met its burden, Pickett must demonstrate it is legally impossible to recover more than $75,000.  *Joyce*, 2019 WL 320596, at *1.  Here, Pickett offers no evidence establishing, to a legal certainty, that her claim falls at or below $75,000.  For example, she does not argue that the attorney's fees awarded will be below $19,411 based on a contingency fee less than 34.9%, or even challenge the $350 hourly rate Villanueva based her calculations on.  Accordingly, the Court denies [11] Pickett's Motion for Remand.

So Ordered this 1st day of October 2021.

*SLR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

9